## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

MID-STATE AFTERMARKET BODY                                    PLAINTIFF
PARTS, INC.

v.                              No. 4:03CV00733 JLH

MQVP, INC., f/k/a
GLOBAL VALIDATORS, INC.                                       DEFENDANT

### OPINION AND ORDER

This is a trademark infringement case in which MQVP accuses Mid-State of selling parts as "MQVP" parts even though it was not licensed to use that trademark. The facts are stated in *Mid-State Aftermarket Body Parts, Inc. v. MQVP, Inc.*, 466 F.3d 630 (8th Cir. 2006), where the Eighth Circuit reversed summary judgment granted to Mid-State and remanded for further proceedings.[1]

In advance of the trial scheduled to begin on April 27, 2009, Mid-State filed a motion *in limine* to exclude any evidence that MQVP was not given adequate access to Mid-State's records or that Mid-State engaged in spoliation of evidence. MQVP in turn moved that the jury be instructed that it could draw inferences adverse to Mid-State due to spoliation of evidence. The Court conducted a hearing regarding these and other motions on April 25, 2009.

To the extent that Mid-State's motion seeks to preclude MQVP from presenting evidence or argument that Mid-State has not provided information in response to discovery requests, that motion is granted. Discovery disputes should be and have been presented to the Court, and all of them have been decided by the Court. The jury may not consider discovery issues.

---

[1] After remand, the case was stayed for eighteen months due to MQVP's bankruptcy.

However, the spoliation issue is a different matter.  In some instances, a court may instruct the jury that it may draw inferences adverse to a party that has destroyed evidence.  A serious issue regarding possible spoliation of evidence has been presented.  For reasons to be stated, the Court has not decided that issue but has, instead, postponed the trial so that further evidence may be developed.

## I.

In determining whether to give a spoliation instruction, the standard is the same under Arkansas law and federal law: "there must be a finding of intentional destruction indicating a desire to suppress the truth." *Stevenson v. Union Pacific R.R. Co.*, 354 F.3d 739, 746 (8th Cir. 2004); *Lewy v. Remington Arms Co.*, 836 F.2d 1104, 1111–12 (8th Cir. 1998) (citing federal law for the general proposition that the adverse inference instruction is appropriate only where the spoliation or destruction of evidence is intentional and indicates a fraud or desire to suppress the truth); *Rodgers v. CWR Constr. Inc.*, 343 Ark. 126, 33 S.W.3d 506, 510 (2000) (noting that "[s]poliation is defined as 'the intentional destruction of evidence and [that] when it is established, the factfinder may draw an inference that the evidence destroyed was unfavorable to the party responsible for its spoliation,'" quoting *Goff v. Harold Ives Trucking, Co.*, 342 Ark. 143, 27 S.W.3d 387, 388 (2000)).  The court should only give a spoliation instruction when the spoliation "was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent." *Lewy*, 836 F.2d at 1112 (quoting *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 96 (3d Cir. 1983)).

Whether to issue a spoliation instruction requires the consideration of two factors: (1) the intent of the party responsible for the destruction and (2) the content of the evidence destroyed.  The second factor has three sub-parts: (a) whether the evidence was relevant to the lawsuit; (b) whether

2

the evidence would have supported the inference sought; and (c) whether the non-destroying party has suffered prejudice from the destruction of the evidence. *See Concord Boat Corp. v. Brunswick Corp.*, 1997 WL 33352759, at *5–7 (E.D. Ark. Aug. 29, 1997).

If a court determines that a spoliation instruction is warranted, the court may instruct the jury in the following or similar language: "You may, but are not required to, assume that the contents of the documents would have been adverse, or detrimental, to the defendant." *See Stevenson*, 354 F.3d at 746. Such an instruction should be given at the conclusion of the trial. *See id.* at 750 ("At the very outset of the trial, the district court informed the jury that the [defendant] had destroyed evidence that should have been preserved, and the plaintiffs referred to this destruction throughout the trial. We see no need to unduly emphasize the adverse inference at the outset of trial . . . .").

If the court gives such an instruction, it must allow the party against whom the inference may be drawn the opportunity to offer a reasonable rebuttal to the inference. *Id.* at 750 ("[U]nfair prejudice should be avoided by permitting the defendant to put on some evidence of its document retention policy and how it affected the destruction of the requested records as an innocent explanation for its conduct. Absent this opportunity, the jury is deprived of sufficient information on which to base a rational decision of whether to apply the adverse inference, and an otherwise permissive inference easily becomes an irrebuttable presumption.").

In *Stevenson*, the Eighth Circuit held that negligence was insufficient to support the giving of the adverse inference instruction: "[W]hile in dicta we articulated a "knew or should have known" negligence standard, such a standard, standing alone, would be inconsistent with the bad faith consideration and the intentional destruction required to impose an adverse inference for the prelitigation destruction of documents." *Stevenson*, 354 F.3d at 746–47. Later, the court said, "[W]e

have never approved of giving an adverse inference instruction on the basis of negligence alone." *Id.* at 748–49.

## II.

MQVP has sought electronic discovery from Mid-State for some time. At some point during discovery, Mid-State provided MQVP with an old back-up tape, but there was no practical way for MQVP to retrieve data from that tape. On February 24, 2009, the Court ordered Mid-State to give MQVP access to its computer system so that MQVP could obtain discovery of electronically stored information relevant to this case. Pursuant to that order, Mid-State gave MQVP access to its computer system in March 2009. MQVP's forensic computer expert issued a report on April 14, 2009, stating that more than 135,000 electronic invoices are missing from Mid-State's computer system. According to MQVP's expert, Mid-State's computer system contained no electronic copies of invoices for the period from January 17, 2001, through September 2, 2003. Mid-State commenced this action on September 2, 2003, so invoices are missing for the thirty-one months immediately preceding the commencement of this action.

At this point, it is unknown as to how, when, or why the electronic invoices for the period of January 17, 2001, through September 2, 2003, were deleted. As noted above, a spoliation instruction is warranted only when evidence is intentionally destroyed to suppress the truth. *Cf. Concord Boat Corp.*, 1997 WL 33352759, at *6–7 ("[B]ad faith is arguably a prerequisite to giving an adverse inference jury instruction. If it is not a prerequisite *per se* it is definitely the primary factor to consider in weighing the appropriateness of the instruction.").

MQVP must also show that (a) the evidence was relevant to the present lawsuit; (b) the evidence would have supported the inference sought; and (c) MQVP has suffered prejudice from the

4

destruction of the evidence.  Sub-parts (a) and (b) overlap somewhat.  MQVP must show some "extrinsic evidence of the content of the evidence for the [Court] to determine in what respect and to what extent it would have been detrimental." *Concord Boat Corp.*, 1997 WL 33352759, at *7 (citing *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 77 (S.D.N.Y. 1991)).  MQVP must also provide "some showing that there is in fact a nexus between the proposed inference and the information contained in the lost evidence." *Id.*  In *Concord Boat Corp.*, the plaintiff argued that deleted emails contained relevant information because some still existing emails contained relevant information.  The court found that the plaintiff presented no evidence that the "relevant" emails would support the inference requested: "It would simply be inappropriate to give an adverse inference instruction based upon speculation that deleted emails would be unfavorable to Defendant's case.  Without some evidence, direct or circumstantial, of the unfavorable content of the deleted e-mails, the Court simply cannot justify giving the adverse inference instruction." *Concord Boat Corp.*, 1997 WL 33352759, at *7.  The Court must also consider the extent to which MQVP has been prejudiced by the destruction of the evidence.  "In most instances the prejudice is readily apparent." *Id.*

MQVP also alleges that relevant evidence was destroyed when Mid-State transferred its servers to those of LKQ Corp.  LKQ purchased Mid-State in August 2005.  MQVP alleges that Mid-State's electronic information was transferred from the Mid-State system without a proper back-up being performed; that the data was then integrated into the LKQ system in such a way that it cannot be differentiated from the LKQ data; and that the computer to which it was transferred has since been discarded.

5

Again, MQVP must first show that the data has actually been destroyed, not that it is difficult to locate electronically. MQVP must then show that Mid-State's transfer of the data to LKQ and the subsequent destruction of the data was done in bad faith, while Mid-State and LKQ knew that a litigation hold should have been in place. Finally, MQVP must show (a) that the evidence was relevant; (b) that the evidence would have supported the inference sought; and (c) that MQVP is prejudiced by the destruction of the evidence. MQVP has not shown that the discarded LKQ computer stored information other than or in addition to the information stored from the MQVP system, from which 135,000 invoices are missing. Thus, the issue comes back to the missing invoices.

That 135,000 electronic invoices are missing for a period of two and one-half years immediately prior to the commencement of this action is obviously suspicious. Mid-State stated at the hearing that another server was made available to MQVP when it examined the Mid-State computer system in March 2009, but MQVP declined to examine that server. Mid-State argued that MQVP could not meet its burden of proving that the electronic copies of invoices actually are missing because it declined to examine the other server. MQVP replied that, when it visited Mid-State's premises to examine the computer system, Mid-State stated that all available electronic information should be available on the system that was examined, so it saw no need to examine the other server, which was not in use. MQVP did not learn of the missing invoices until April 14 – less than two weeks before trial – and so has been unable to examine the other server.

Mid-State also argues that paper copies of the invoices are available, but MQVP has pointed to evidence that the paper records are not complete. MQVP has cited an instance in which it subpoenaed records from a customer of Mid-State, and the customer produced four Mid-State

invoices with "MQVP" on them, whereas Mid-State's files for that customer had only one such invoice. Thus, MQVP argues that Mid-State's paper files cannot be accepted as complete, and the electronic database is needed precisely because Mid-State's paper files have proven to be unreliable.

If the Court were to give the spoliation instruction as MQVP has requested, and if the missing electronic invoices were on the other server that Mid-State told MQVP that it could examine, an injustice would be done to Mid-State. On the other hand, if the Court were to deny the spoliation instruction on the ground that without a search of the other server it has not been proven that electronic invoices were destroyed, when in fact those electronic invoices are not on the other server, an injustice might be done to MQVP. Without knowing what information is on the unexamined server, the Court cannot confidently rule on the issue of whether Mid-State intentionally destroyed electronic invoices for the purpose of suppressing the truth. Consequently, it is necessary to continue the trial and reopen discovery.

The Court orders that Mid-State give MQVP access to the other server at a mutually agreeable time. If MQVP fails or refuses to examine the server, no spoliation instruction will be given. If MQVP examines the server and finds that the electronic invoices also are missing from that server, the Court will entertain further arguments from the parties on the issue of whether to give a spoliation instruction, and, if so, what the instruction should say.

## CONCLUSION

Mid-State's motion *in limine* to exclude evidence that MQVP was not given adequate access to Mid-State's records or that Mid-State engaged in spoliation of evidence is granted in part and denied in part. MQVP will not be permitted to revisit discovery disputes in the presence of the jury, so to that extent Mid-State's motion is granted. Mid-State's motion to exclude evidence of

spoliation is denied as premature based on the Court's decision to continue the trial and reopen

discovery.  Document #176.  For the same reason, MQVP's motion for a spoliation instruction is

denied as premature.  Document #186.

       IT IS SO ORDERED this 27th day of April, 2009.


_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE