IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

MID-STATE AFTERMARKET BODY                                                            PLAINTIFF
PARTS, INC.

v.                                    Case No. 4:03CV00733 JLH

MQVP, INC., f/k/a
GLOBAL VALIDATORS, INC.                                                               DEFENDANT

**OPINION AND ORDER**

MQVP has filed a motion asking the Court to remove opposing counsel, Mark M. Grossman and Andrew V. Francis, from the case for tampering with a nonparty witness and obstruction of justice, and to enter a default judgment against Mid-State Aftermarket Body Parts, Inc. On April 23, 2009, U.S. Magistrate Judge Jerry Cavaneau conducted a telephone conference and heard arguments in support of and in opposition to MQVP's motion. On April 25, 2009, this Court conducted a pretrial hearing, in part to consider further arguments and evidence regarding MQVP's motion. For the following reasons, that motion is denied.

**I.**

On April 8, 2009, MQVP served Michael Gillooley, owner of Right Way Body Shop, with a nonparty trial subpoena pursuant to Rule 45 of the Federal Rules of Civil Procedure. MQVP named Gillooley as a witness in this litigation, and the subpoena mandated his personal appearance at trial – which then was scheduled to begin on April 27, 2009 – and required that he produce records at trial. Gillooley had previously provided an affidavit that MQVP filed in support of a motion for summary judgment. On April 17, Gillooley left a message with Carl Rashid, one of the lawyers for MQVP, requesting that Rashid return his call, which Rashid did the same day.

During the course of his conversation with Rashid, Gillooley stated that he had purchased thousands of MQVP parts from Mid-State but that he would be unable to testify at trial due to a planned trip. According to Rashid's characterization of the conversation, Gillooley was very cooperative and forthcoming. Rashid told Gillooley that he would make arrangements for an evidentiary deposition in lieu of live testimony.

Approximately forty-five minutes after their phone conversation, Rashid again called Gillooley. Rashid sent Gillooley an email summarizing their conversations, and Gillooley agreed to review it for accuracy. Later that same day, Rashid called Gillooley to confirm receipt of the email, but no one at Right Way could locate Gillooley. Three days later, on April 20, 2009, Rashid emailed Gillooley to schedule his evidentiary deposition. Having received no response, Rashid sent another email several hours later.

On April 21, 2009, Rashid received an email from counsel for Mid-State, Mark Grossman. Grossman informed Rashid that his office represented Gillooley regarding his trial subpoena and that Rashid should direct all future communications directly to his office. Grossman's email also stated time restrictions for Gillooley's deposition.

On April 22, 2009, MQVP filed an emergency motion to remove Grossman and Francis for tampering with a nonparty witness and obstruction of justice and for a default judgment in favor of MQVP. Mid-State responded, and Judge Cavaneau conducted a telephone conference. Grossman and Francis stated that their intention in agreeing to represent Gillooley was merely to "hold his hand" through the deposition and discovery process. Judge Cavaneau noted that, as a Magistrate Judge, he did not have jurisdiction to rule on the motion for default judgment, and he found that removing Grossman and Francis would be premature based on the evidence presented. However,

Judge Cavaneau stated that the situation – that a nonparty witness had became a client of counsel for a party in the case – was troubling. Grossman and Francis voluntarily agreed to withdraw representation of Gillooley. The parties agreed to proceed with Gillooley's evidentiary deposition with the intent of further elucidating the nature of the communications between Mid-State's counsel and Gillooley and the extent of any potential tainting of his testimony. Gillooley testified that Grossman and Francis offered to represent him and that he accepted the offer after consulting with a friend who is an attorney. He also testified that Grossman and Francis told him to provide the records required by the subpoena and to testify truthfully. He did not contradict the statements that he had previously made to MQVP's lawyers, but neither did he unequivocally affirm them.

## II.

Whether to grant or deny a motion to disqualify an attorney is within the sound discretion of the district court. *Midwest Motor Sports v. Arctic Cat Sales, Inc.*, 347 F.3d 693, 700 (8th Cir. 2003). Attorney disqualification "is a drastic measure that should only be imposed when it is clearly required by the circumstances. *Wal-Mart Stores, Inc. v. Vidalakis*, 2007 WL 448688, at *1 (W.D. Ark. Dec. 17, 2007) (citing *Norman v. Norman*, 333 Ark. 644, 652-53, 970 S.W.2d 270, 273-74 (1998)). The Court also has discretion in determining whether a default judgment is warranted. *Meredith v. Baldwin Piano, Inc.*, 2009 WL 252291, at *1 (E.D. Ark. Jan. 30, 2009) (citing *Federal Trade Comm'n v. Packers Brand Meats, Inc.*, 562 F.2d 9, 10 (8th Cir. 1977)). Default judgments are not favored. *Id.* (citing *United States v. Harre*, 983 F.2d 128, 130 (8th Cir. 1993)).

MQVP argues that attorney disqualification and default judgment are warranted based on opposing counsel's solicitation of a nonparty witness, Gillooley, and dual representation of both

Mid-State and Gillooley. Several of the Arkansas Rules of Professional Conduct[1] are relevant to the Court's consideration of whether Grossman and Francis should be disqualified and whether a default judgment is warranted.

Rule 1.7(a) provides, "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if . . . there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client . . . or a third person." However, Rule 1.7(b) permits a lawyer to represent a client when concurrent conflict of interest exists if:

> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> (2) the representation is not prohibited by law;
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
> (4) each affected client gives informed consent, confirmed in writing.

ARKANSAS RULES OF PROF'L CONDUCT R. 1.7(b) (2007); *see also* Restatement (Third) of the Law Governing Lawyers § 121 (2000). "Loyalty and independent judgment are essential elements in the lawyer's relationship to a client." *Id.* at cmt. 1. Rule 3.4 deals with fairness to the opposing counsel: "A lawyer shall not unlawfully obstruct another party's access to evidence." ARKANSAS RULES OF PROF'L CONDUCT R. 3.4(a) (2007). Finally, Rule 7.3 deals with direct contact with prospective clients: "A lawyer shall not solicit by any form of direct contact, in-person or otherwise, professional employment from a prospective client with whom the lawyer has no family or prior professional

---

[1] Lawyers practicing before this Court are governed by the Arkansas Rules of Professional Conduct. *See* Rule 1V.B of the Model Federal Rules of Disciplinary Enforcement. The Arkansas Rules of Professional Conduct are patterned on the Model Rules of Professional Conduct promulgated by the American Bar Association.

relationship when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain." ARKANSAS RULES OF PROF'L CONDUCT R. 7.3 (2007).

Several cases have applied the rules to fact situations similar to the present case. In *Chemfree Corp. v. J. Walter, Inc.*, 2008 WL 5234252 (N.D. Ga. June 11, 2008), plaintiff's counsel subpoenaed nonparty witnesses for deposition testimony. After speaking with the witnesses on two different occasions, plaintiff's counsel was informed by defense counsel that they were representing the nonparty witnesses in connection with their depositions. *Chemfree Corp.*, 2008 WL 5234252, at *1. Plaintiff's counsel asked the district court to review whether defense counsel's actions were improper under Georgia Rules of Professional Conduct 1.7, 3.4, or 7.3.[2] *Id.*

The court stated that "representing a third party during a deposition while also serving as defense counsel changes the rules of the deposition process and calls particular attention to the manner in which the attorney was retained by the third party." *Chemfree Corp.*, 2008 WL 5234252, at *2. The court held that, because no direct conflict of interests existed between the party and the nonparty, the dual representation did not violate Rule 1.7, although it did raise professionalism concerns. *Id.* at *2, 4. Likewise, the court held that the dual representation did not violate Rule 3.4 because there was no evidence of an intentional attempt to deprive plaintiff's counsel of access to the witnesses or evidence, although the court allowed consideration of the dual representation in judging the witnesses' credibility and the weight to be given to their testimony. *Id.* at *4-5. Finally, the court held that there was insufficient evidence of improper solicitation sufficient to justify further inquiry into a violation of Rule 7.3. *Id.* at *5.

---

[2] The Georgia Rules of Professional Conduct, like the Arkansas rules, are patterned on the Model Rules of Professional Conduct.

Other cases have also held that there must be evidence of an actual conflict or a potential conflict in order to justify attorney disqualification or to constitute a breach of the rules of professional conduct. *See, e.g.*, *Guillen v. City of Chicago* 956 F. Supp. 1416, 1426-27(N.D. Ill. 1997) (allowing the city's attorneys also to represent nonparty paramedic witnesses so long as the attorneys fully informed the clients of the pros and cons of joint representation, and holding that there was no violation of Model Rule 1.7 because no actual conflict had materialized); *Varner v. Palmdale Chamber of Commerce*, 2002 WL 1398236, at *3-4 (Cal. App. 2 Dist. June 28, 2002) ("California Rules of Professional Conduct only require[] written consent to joint representation where there is an actual or at least a potential conflict of interest. No such actual conflict exists and no facts demonstrating a potential conflict have been revealed."); *State of West Virginia ex rel. Morgan Stanley & Co., Inc. v. MacQueen*, 187 W. Va. 97, 102–03, 416 S.E.2d 55, 60-61 (1992) (disqualifying the state's law firm from also representing state employees who had allegedly committed wrongdoing unless the state removed allegations from the complaint regarding the nonparty employees).

After considering the requirements of the Arkansas Rules of Professional Conduct and the applicable case law, and applying those to the facts of this case, the Court finds that attorney disqualification and default judgment are not warranted. Mid-State's attorneys did not suggest to Gillooley that he should refuse to produce documents responsive to the subpoena nor that he testify untruthfully. The representation of Gillooley by Mid-State's attorneys was brief in duration and was terminated before Gillooley's deposition. The representation did not deprive MQVP of access to Gillooley's testimony. Mid-State has agreed that MQVP will be permitted to tell the jury what Gillooley said in his affidavit and during his communication with Rashid before the deposition about

buying thousands of MQVP parts from Mid-State. Gillooley is one of several witnesses from auto body shops whom MQVP intends to call to offer such testimony. This is not a case in which attorney misconduct, if any occurred, has been so serious or so prejudicial to the opposing party as to justify the severe sanctions of entering a default judgment or disqualifying an attorney.

Nevertheless, this opinion should not be taken as endorsing the practice of a lawyer who represents a party in litigation offering to represent nonparty witnesses during their testimony. In ABA Informal Opinion 828, the Committee on Professional Ethics addressed the following question:

> In a civil suit, where one party (defendant) gives notice of taking depositions of independent witnesses (former employees of plaintiff corporation), is it proper for the attorney for the other party (plaintiff) to invite the noticed witnesses to engage him as attorney to represent them during their depositions, concurrently with his serving as attorney for the other party (plaintiff)?

In its answer, the Committee referenced Canon 27 of the Canons of Professional Ethics, which stated that it is unprofessional to solicit professional employment. The Committee answered: "It is not proper for the attorney to invite the witness to engage him as an attorney to represent the witness during the deposition." ABA Comm. on Prof'l Ethics, Informal Op. 828 (1965). Although this informal opinion was issued under Canon 27 of the Canons of Professional Ethics, which are no longer in effect, the notion that it is unprofessional to solicit professional employment has not been entirely banished from the Rules of Professional Conduct, as Rule 7.3 indicates.

Furthermore, a lawyer who represents a nonparty witness in litigation in which he represents a party runs the risk that the testimony of one client may contradict the testimony of the other client, in which case his duty to the party whom he represents may dictate that he impeach the credibility of the nonparty witness, but doing so might violate his duty to the nonparty witness. Hence, there is risk that a lawyer's representation of one client might materially limit his ability to fulfill his

7

responsibility to the other client. Similar, and perhaps even more intractable, problems may arise regarding the confidentiality of communications. If a lawyer for a party interviews a witness, the lawyer is free to tell the client what the witness said, and he may even be obligated to do so, but if the lawyer represents the witness, the lawyer may be prohibited from telling anyone, including his client who is a party in the case, what the witness said.

Moreover, a lawyer who represents a witness can prohibit lawyers for the parties from communicating with the witness except in his presence. *See* ARKANSAS RULES OF PROF'L CONDUCT R. 4.2. If a lawyer for a party to a case could solicit nonparty witnesses to be his clients, he could effectively prohibit opposing counsel from communicating with witnesses except through him, and if that were permitted litigation could turn into an unseemly scramble by lawyers for the parties to solicit nonparty witnesses as their clients. No matter how pure a lawyer's motives might be, whenever a lawyer for a party solicits a nonparty witness to be his client, the appearance will be given, whether justified or not, that the lawyer is trying to influence the witness's testimony. Although the Model Rules of Professional Conduct do not include a prohibition on the appearance of impropriety, Arkansas has retained the "appearance of impropriety" standard in attorney disqualification cases. *Berry v. Saline Memorial Hosp.*, 322 Ark. 182, 189, 907 S.W.2d 736, 740-41 (1995); *Saline Memorial Hosp. v. Berry*, 321 Ark. 588, 595-97, 906 S.W.2d 297, 300-01 (1995).

## CONCLUSION

MQVP's motion to remove Mid-State's lawyers and for a default judgment is denied. Document #206. The Court nevertheless cautions lawyers not to solicit a nonparty witness as a client in connection with a case in which the lawyer also represents a party.

IT IS SO ORDERED this 4th day of May, 2009.

                                         /s/ J. Leon Holmes
                                         J. LEON HOLMES
                                         UNITED STATES DISTRICT JUDGE